**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TAMARA BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Memorandum Opinion, Order**, |
| | ) | **and Recommendation** |
| DODSON BROTHERS | ) | 1:09CV106 |
| EXTERMINATING COMPANY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a motion to dismiss (docket no. 7) by Defendant Dodson Brothers Exterminating Company, Inc. ("Dodson") and on a motion to amend the complaint by Plaintiff Tamara Belton (docket no. 10). The parties have responded to the respective motions; therefore, the matter is ripe for disposition. Furthermore, because the parties have not consented to the jurisdiction of the magistrate judge the court must deal with any dispositive motions by way of recommendation. For the following reasons, Plaintiff's motion to amend the complaint is granted. Furthermore, it will be recommended that the court grant the motion to dismiss in part and deny it in part.

## BACKGROUND

This lawsuit arises out of Defendant's termination of Plaintiff's employment on February 15, 2008. On January 9, 2009, Plaintiff filed a complaint in state court, alleging the following purported claims: (1) violation of the Family and Medical Leave

Act; (2) wrongful discharge in violation of North Carolina public policy; and (3) punitive damages. On February 9, 2009, Defendant removed the action to this court. Defendant has moved to dismiss all three claims.

Plaintiff's Motion to Amend the Complaint

I first address Plaintiff's motion to amend the complaint. In the initial complaint, Plaintiff alleges, among other things, that she suffers from a "serious medical condition," and that Defendant terminated her employment in violation of the FMLA after refusing to allow her to take FMLA leave. The proposed amended complaint describes in more detail the alleged "serious medical condition" from which Plaintiff allegedly suffers. In opposing the motion to amend, Defendant contends that Plaintiff has alleged only garden-variety ailments, not serious medical conditions, in the proposed amended complaint, and therefore allowing the motion to amend would be futile.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Amendments that cannot withstand a motion to dismiss are futile and, as a result, the court may deny the motion to amend. It is often a better exercise of the court's discretion, however, and a conservation of judicial resources, to leave decisions on the merits with respect to motions to amend until the matter has been fully briefed in a motion to dismiss. In ruling on a motion to amend, a court should only delve into the merits when it is absolutely clear that the amendment is frivolous. *See generally*

6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1487, at 635-43 ($2^d$ ed. 1990). Here, the proposed amendments to the complaint are not clearly frivolous. Therefore, the court will grant the motion to amend, and the court will address whether the allegations in the amended complaint are sufficient to survive Defendant's pending motion to dismiss.[1]

**FACTS**

The following facts from the amended complaint are assumed to be true for the purpose of Defendant's motion to dismiss:

Plaintiff began her employment with Defendant on February 5, 2007, and remained continuously employed as a secretary in Defendant's Greensboro office until Defendant terminated her employment on February 15, 2008. (Amended Comp. ¶ 3.) In December 2007, Plaintiff informed her supervisor, Joseph Brissette, that her treating physicians had advised her that she would need to have two surgical procedures in early 2008. (*Id.* ¶ 4.) Plaintiff alleges that the conditions that necessitated her surgeries were serious health conditions, in that Plaintiff's physicians deemed Plaintiff's medical conditions, metatarsalgia (foot pain) and hidradenitis suppurativa (hair follicle disorder), to require continuing treatment and in-patient care, including multiple medical treatments, a course of prescription

---

[1] Normally, the court's allowance of a motion to amend moots a motion to dismiss the original complaint since the amended complaint supersedes the original complaint. Here, however, in its pleadings before the court, Defendant has addressed the sufficiency of the allegations in the proposed amended complaint; therefore, there is no need to require Defendant to file a new motion to dismiss.

medication, surgery under general anesthesia, in-patient hospital care, and subsequent medical treatment in connection with such hospital care. (*Id.*) Plaintiff further alleges that if she had remained employed by Defendant, the medical conditions would likely have resulted in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment. (*Id.*)

On February 13, 2008, Plaintiff submitted documents to Brissette to obtain short-term disability benefits and medical leave, therefore notifying Defendant of her serious health conditions and the reasons for her need to take leave. (*Id.* ¶ 5.) On February 15, 2008, Defendant terminated Plaintiff's employment because she made "too many mistakes." (*Id.* ¶ 6.) Before her termination, Plaintiff was given no warning of her termination, nor did Defendant give her any reason to believe that her performance was unsatisfactory. (*Id.*)

Plaintiff alleges that if Defendant had allowed Plaintiff to take medical leave as requested, she would have been able to return to her position of employment within twelve weeks of the date on which her requested leave would have commenced. (*Id.* ¶ 7.) Plaintiff alleges that Defendant terminated her employment because she requested extended medical leave. (*Id.* ¶ 8.)

Based on the above facts, Plaintiff brings the following three claims: (1) a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; (2) wrongful discharge in violation of the public policy of North Carolina; and (3) punitive

damages.

**DISCUSSION**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support her right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

(internal quotation marks omitted). With these principles in mind, the court now turns to the motion to dismiss.

A. Defendant's Motion to Dismiss Plaintiff's Claim for Violation of the FMLA

Defendant contends that Plaintiff's FMLA claim should be dismissed even with the more specific allegations in the amended complaint because Plaintiff simply fails to allege that she suffered from a serious medical condition within the meaning of the FMLA. I do not agree. As noted, in the amended complaint, Plaintiff alleges that the conditions that necessitated her surgeries were serious health conditions, in that Plaintiff's physicians deemed Plaintiff's medical conditions, metatarsalgia (foot pain) and hidradenitis suppurativa (hair follicle disorder), to require continuing treatment and in-patient care, including multiple medical treatments, a course of prescription medication, surgery under general anesthesia, in-patient hospital care, and subsequent medical treatment in connection with such hospital care; and, if Plaintiff had remained employed by Defendant, the medical conditions would likely have resulted in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment. (Amended Compl. ¶ 4.) I find that the allegations are sufficient to survive a motion to dismiss under the *Twombly* standard. Therefore, the court should deny Defendant's motion to dismiss Plaintiff's FMLA claim.

B. Defendant's Motion to Dismiss Plaintiff's Claim for Wrongful Discharge in Violation of the Public Policy of North Carolina

-6-

North Carolina is an "at-will" employment state, which means that, in the absence of a contractual agreement between an employee and an employer establishing a definite term of employment, the relationship is terminable at the will of either party without regard to the quality of performance of either party. *See Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). The North Carolina courts have, however, recognized very limited exceptions to the employment-at-will rule, including that in certain instances at-will employees in North Carolina may bring claims for wrongful discharge in violation of public policy. To state a claim for wrongful discharge in violation of public policy, an at-will employee must plead and prove that the employee's dismissal occurred "for a reason that violates public policy." *Considine v. Compass Group USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181, *aff'd*, 354 N.C. 568, 557 S.E.2d 528 (2001).

The North Carolina courts have recognized two limited situations in which an at-will employee may bring a claim for wrongful discharge in violation of public policy. First, in *Sides v. Duke University*, a nurse was held to have stated a claim for wrongful discharge after she refused her employer's instructions to commit perjury in violation of North Carolina law in a medical malpractice action brought against her employer. 74 N.C. App. 331, 328 S.E.2d 818 (1985). Then, in *Coman v. Thomas Manufacturing Co.*, the North Carolina Supreme Court recognized a claim for wrongful discharge in violation of public policy where a truck driver alleged that he

-7-

was discharged because he refused his employer's instructions to drive in violation of federal DOT safety regulations, which have been adopted in the North Carolina Administrative Code, and where he refused his employer's instructions to falsify records to show compliance with highway safety regulations. 325 N.C. 172, 381 S.E.2d 445 (1989). There, the court observed that requiring an employee to commit an unlawful act under North Carolina law, or terminating his employment for refusing instructions to violate North Carolina law, offends the public policy of North Carolina and therefore creates an impermissible basis for termination. *See id.* at 175-76, 381 S.E.2d at 447-48. Thus, the North Carolina courts have recognized a public policy exception where an employee has refused an employer's instructions to commit an unlawful act.

The North Carolina courts have also held that a plaintiff may bring a claim for wrongful discharge in violation of public policy in cases involving activity that North Carolina law identifies for either express protection or express prohibition as a matter of important public policy to the State of North Carolina. *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353-54, 416 S.E.2d 166, 169-70 (1992) (recognizing a wrongful discharge claim where an employee was terminated for refusing to work for less than minimum wage). These protected or prohibited activities must, however, be "confined to the express statements contained within [North Carolina's] General Statutes or [the State's] Constitution," *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005). In determining whether certain activities

-8-

meet the limited public policy exception to the at-will doctrine, North Carolina courts focus on the "potential harm to the public at large." *Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C. App. 689, 695, 513 S.E.2d 85, 89 (1999).

In the few cases in which the North Carolina Supreme Court has addressed this second category of wrongful discharge exceptions, the Court has held that the alleged activity did not merit creation of a new exception to at-will employment. *See, e.g.*, *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 572-73, 515 S.E.2d 438, 441-42 (1999) (refusing to recognize a wrongful discharge claim where an employer allegedly violated the State's drug testing act); *Kurtzman*, 347 N.C. at 331-35, 493 S.E.2d at 421-24 (refusing to recognize a wrongful discharge claim for an employee who moved to North Carolina based on a promise of employment).

Furthermore, the North Carolina courts routinely reject wrongful discharge claims if there is no clear statutory provision declaring the express intent of State public policy to protect an employee's activity. For instance, in *Imes v. City of Asheville*, the Court of Appeals affirmed the trial court's dismissal of the plaintiff's wrongful discharge claims where the plaintiff alleged that the defendant terminated plaintiff's at-will employment because plaintiff had been a victim of domestic violence. 163 N.C. App. 668, 594 S.E.2d 397, *aff'd*, 359 N.C. 182, 606 S.E.2d 117 (2004). The court observed:

> The complaint . . . does not allege that Defendants' conduct violated any explicit statutory or constitutional provision, nor does it allege Defendants encouraged Plaintiff to violate any law that might result in potential harm to the public. Instead, the complaint alleged that

> "domestic violence is a serious social problem in North Carolina" and that "termination of any employment based on the employee's status as a victim of domestic violence tends to be injurious to the public and against the public good." Plaintiff acknowledges that "there are no North Carolina cases which specifically carve out a public policy exception to the employment-at-will doctrine based on domestic violence." Nor does Plaintiff cite North Carolina statutory law in support of his position. . . . . If the General Assembly desires to exempt victims of domestic violence from the at-will employment doctrine, it is free to do so. This Court, however, may not create public policy exemptions where none exist.

*Id.* at 671-72, 594 S.E.2d at 399-400.

Here, Plaintiff's allegations do not fall within either of the two categories of viable claims for wrongful discharge in violation of public policy. Plaintiff alleges in the amended complaint that her termination violated "the public policy of North Carolina, including but not limited to the public policy expressed in the Family Medical Leave Act, and Article I, Section 5, of the North Carolina Constitution." As Defendant notes, however, where the defendant's conduct allegedly violating North Carolina public policy is only a claimed violation of a federal statute, that alleged fact, "in and of itself, is not sufficient to constitute an express statement of [North Carolina] public policy." *McDonnell v. Guilford County Tradewind Airlines, Inc.*, 670 S.E.2d 302, 306 (N.C. Ct. App. 2009) (refusing to recognize a wrongful discharge claim where the defendant employer terminated a pilot after he refused to fly a non-revenue airline flight on the basis that he was too tired). Plaintiff specifically contends that the FMLA is the public policy of North Carolina by virtue of Article I, Section 5, of the North Carolina Constitution, which recognizes the supremacy of

-10-

Case 1:09-cv-00106-NCT-WWD   Document 24   Filed 09/30/09   Page 10 of 12

federal law.[2]  Plaintiff's argument is without merit, as to accept this argument would transform every federal law into a statement of North Carolina public policy.

For all these reasons, Defendant's motion to dismiss Plaintiff's wrongful discharge claim should be granted.

C.  Defendant's Motion to Dismiss Plaintiff's Claim for Punitive Damages

Plaintiff's third cause of action purports to be a stand-alone claim for "punitive damages."  As Defendant notes, however, a claim for punitive damages is merely a form of relief ancillary to a recognized cause of action, which is sought in addition to compensatory damages.  Furthermore, the FMLA, by its terms, only provides for compensatory damages and not punitive damages.  *See* 29 U.S.C. § 2617(a); *Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.6 (9th Cir. 2003); *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 772 (M.D.N.C. 2000).  Therefore, Plaintiff's claim for punitive damages should be dismissed.

**CONCLUSION**

For the reasons stated herein, Plaintiff's motion to amend (docket no. 10) is **GRANTED**. Furthermore, it is recommended that Defendant's motion to dismiss be **GRANTED** in part and **DENIED** in part (docket no. 7).  That is, the court should

---

[2] Article I, Section 5 provides:

Every citizen of this State owes paramount allegiance to the Constitution and government of the United States, and no law or ordinance of the State in contravention or subversion thereof can have any binding force.

N.C. CONST., art. I, § 5.

dismiss Plaintiff's claims for wrongful discharge in violation of North Carolina public policy and punitive damages. The court should, however, deny the motion to dismiss as to Plaintiff's claim for a violation of the FMLA.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
September 30, 2009